[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is a habeas matter. The petitioner's petition, dated April 29, 1994, was filed on May 5, 1994. His Amended Petition CT Page 5361 was filed on March 19, 1996. The respondents Return was filed on March 22, 1996. A hearing on the petition was held on January 26, 1999, at which both parties appeared and were represented by counsel.
 II
The petitioner was the defendant in State of Connecticut v.William X. Jones, Docket No. CR7-141231, New Haven Judicial District, charged with one count of robbery in the second degree, in violation of General Statutes, Section 53a-135(a)(2) and one count of larceny in the second degree, in violation of General Statutes, Section 53a-123(a)(3). On June 24, 1993, after trial by a jury, the petitioner was convicted on both counts. He was then charged with being a persistent dangerous felony offender, in violation of general Statutes, Section 53a-40(a) and being a persistent serious felony offender, in violation of General Statutes, Section 53a-40(b). On June 25, 1993, he was convicted of both charges. On July 23, 1993 the petitioner received a total effective sentence of 25 years. He appealed his convictions, which were affirmed by the Appellate Court in State v. WilliamJones, 36 Conn. App. 943, cert. denied, 232 Conn. 914 (1995). His habeas petition alleges that his convictions and resultant incarceration are illegal in that they were obtained in violation of his right to effective assistance of counsel under Article I, Section 8 of the Constitution of Connecticut and Amendments VI and XIV of the Constitution of the United States.
 III
This petition is in four counts, each alleging ineffective assistance of counsel, Steven Walsh, who represented the petitioner both at trial and on appeal.
Count One alleges that trial counsel, in his questioning of a witness, Detective Howard, "opened the door" for "the State to tell the jury" that the petitioner "was a suspect in other incidents including being arrested for another case";
Count Two alleges that trial counsel, in his questioning the victim, Criscuolo, opened the door to an in-court identification of the petitioner as the man who robbed him, by the victim;
Count Three alleges that trial counsel failed to object to an erroneous court instruction, which instruction allegedly CT Page 5362 "directed" a verdict;
Count Four alleges that trial counsel filed a request for jury instruction on reasonable doubt which contained a conflicting request and exception, nor did trial counsel object to the instruction given the jury by the court concerning reasonable doubt.
 IV
A habeas petitioner claiming a deprivation of his constitutional right to effective assistance of counsel has the burden of showing that (1) the performance of his counsel was "deficient", in that it was outside the range of reasonable professional assistance of a competent trial or appellate lawyer; and (2) that the deficient performance "prejudiced" the petitioner such that there is a reasonable probability that, but for the deficient performance of counsel, the result would have been different, Strickland v. Washington, 466 U.S. 668, 687-94,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[A] court must indulge a strong presumption that counsels conduct falls within the wide range of reasonable professional assistance . . .", Id., at 689.
 V
The incident giving rise to the petitioners challenged conviction occurred at approximately 9 PM on June 20, 1991, at Mike's Automotive, a gasoline station and convenience store located on Maple Avenue in the town of North Haven. Testimony at trial indicated that at that time an employee, David Criscuolo, was alone in the store when a black male entered, obtained some change from Criscuolo and exited briefly, making a telephone call at a booth outside the store. He then reentered the store, inquired regarding the availability of towing service, then stepped over to a tea and coffee maker and poured himself a cup of tea. He picked up a danish pastry and approached Criscuolo. placing the danish and a dollar bill on the counter. As Criscuolo rang up the sale on a cash register, the customer produced what appeared to be a handgun and demanded all the money from the register. Criscuolo was wearing a beeper attached to his shorts and the customer took the beeper. Criscuolo moved toward the front entrance and the customer put the gun to Criscuolo's head, put an arm around him, dragged him back behind the counter and threw him down and told Criscuolo not to move. The perpetrator then exited the store. CT Page 5363
Subsequently, Criscuolo participated in the preparation of a composite sketch of the perpetrator.
Some days after the robbery, Criscuolo was shown a photo array, which included a photo of the petitioner, but Criscuolo was unable to make a positive identification.
Criscuolo pointed out to police investigators various items which he testified he had seen the perpetrator touch., including a paper or cardboard coffee cup and the coffee maker. At the time of trial the state's expert witness testified that a thumb print on the starting button of the coffee maker and prints on the cup were those of the petitioner.
On July 11, 1991, the petitioner was arrested in connection with an armed robbery occurring on that date in the city of New Haven. During questioning following this arrest the petitioner gave a statement admitting his involvement in the June 20, 1991 robbery at Mike's Automotive.
At the time of trial, Criscuolo made an in-court identification of the petitioner as the man who'd robbed him in Mike's on June 20th.
 VI
In Count One the petitioner claims that in cross-examining a Detective Howard, trial counsel "opened the door for the State to tell the jury that the petitioner was a suspect in other "incidents including being arrested for another case"; and that, "in addition to being a suspect in other incidents, the petitioner was essentially a criminal who knew the ways of the criminal justice system."
A review of the trial transcript reveals that the prosecutor, on direct examination of Howard, elicited that Howard had arrested the petitioner on July 11th for an "incident transpiring in New Haven on that date.(Transcript, June 22, 1993, p. 96).and that the petitioner had given a taped statement in the presence of Detective Olsen of the North Haven Police Department, which was played to the jury. Following cross examination and outside the presence of the jury, the prosecutor sought approval from the court to elicit from the witness that the petitioner was a suspect in some fifteen robberies in the New Haven area and that CT Page 5364 one of the benefits which the petitioner saw in talking to the detective was the opportunity it gave the petitioner to differentiate to the detective between what the petitioner had, and had not, done. After hearing the witness testimony outside the presence of the jury the court indicated it would allow limited testimony regarding the questions and answers between the detective and the petitioner, with reference to other incidents, without reference to the nature of the crimes being investigated or whether the petitioner was or was not a suspect in those crimes.(Transcript, pp. 113, 114). Then followed the re-direct commencing on page 118 of the transcript and continuing in pertinent part to the middle of page 119. From this testimony on redirect, a juror might reasonably conclude that at the time he was questioned by Howard the petitioner was a suspect in one or more `incidents' other than the robbery at Mike's Automotive. Accepting the assertion that trial counsel, by his cross-examination, "opened the door" to this testimony, the crucial question is: absent such testimony, is there a reasonable possibility that the result of the petitioner's trial would have been different? The answer is no. Given the strength of the state's case, notably fingerprint identification and a confession by the petitioner which corroborated many of the victims statements, the testimony elicited on redirect was inconsequential. Absent that testimony, there is no reasonable possibility that the result of the trial would have been different. At the habeas hearing trial counsel testified his questioning of Howard sought to cast doubt on the claim that the petitioner had given his statement voluntarily, without threat or deception. The petitioner has failed to show that counsels performance in this regard fell outside the range of reasonable professional assistance. The petitioner has failed to prove, by a fair preponderance of the evidence, that trial counsels cross examination of Howard constituted ineffective assistance of counsel.
 VII
The petitioner, in Count Two, alleges that trial counsel, having recalled Criscuolo as a defense witness, by his questioning opened the door to Criscuolo's making an in-court identification of the petitioner, which the court had not allowed during Criscuolo's testimony as a state's witness. At the habeas hearing, trial counsel testified that at trial he believed that the "identification issue" was an issue he had to press as "we didn't have too much else to work with". The state had both the CT Page 5365 fingerprint evidence and the petitioner's taped statement, which statement corroborated many of Criscuolo's assertions. But Criscuolo had helped develop a composite which trial counsel felt did not resemble the petitioner; and Criscuolo had been unable to identify the petitioner from the photo array. Recognizing that an in-court identification would be a suggestive procedure, trial counsel felt he could emphasize its suggestiveness in argument to the jury, which he later did. (Trial Transcript,, pp. 249-50, June 24, 1993). Trial counsel concluded that Criscuolo's inability to identify the petitioner prior to trial outweighed any harm that might be caused by an in-court identification. Trial counsel proceeded to question Criscuolo extensively regarding the composite and the photo array. On cross examination the state's attorney was permitted to ask Criscuolo if he recognized the individual who had robbed him and Criscuolo identified the petitioner as that individual. The petitioner claims that the said questioning of Criscuolo was error which fell below the range of competence displayed by lawyers with ordinary training and skill in the criminal law. The court is not persuaded. No expert testimony was offered as to what that range of competence might be. The court concludes that trial counsels decision to risk "opening the door" to an in-court identification was a reasonable tactical decision and that absent such an identification there was no reasonable probability that the outcome of the trial would have been different. The court finds that the petitioner has failed to establish, by a fair preponderance of the evidence, that trial counsels questioning of Criscuolo constituted ineffective assistance of counsel.
 VIII
Count Three of the amended petition is titled: "Ineffective Assistance of Counsel — Jury Instruction on Reasonable Doubt — Part B Information". Following the petitioner's conviction, on June 24, 1993, on charges of robbery in the second degree and larceny in the second degree the petitioner was put to plea on one count of being a persistent dangerous felony offender in violation of General Statutes, Section 53a-40(a) and one count of being a persistent serious felony offender, in violation of General Statutes, Section 53a-40(b). These charges were contained in the "Part B Information" referred to by petitioner. Upon the petitioner's pleading not guilty and electing a trial by jury, the jury which had just convicted him on the robbery and larceny counts were instructed to return the following day, on which a trial on the Part B counts was had. The petitioner was found CT Page 5366 guilty on both the persistent dangerous felony offender and the persistent serious felony offender counts.
Count Three alleges that the trial court's instructions to the jury with reference to the second count, that of being a persistent serious felony offender, were erroneous, in that said instructions "directed a verdict". The ineffective assistance claim in Count Three is based on trial counsels failure to object to the instruction in question. No testimony on this issue was elicited from trial counsel in the course of the habeas hearing. In closing argument petitioner's counsel contented himself with referring the court to the allegations of the petition. A claim of an erroneous jury instruction is properly raised on appeal and, in paragraph lid, of his Third Count, the petitioner alleges that his appellate counsel did indeed raise this issue on appeal. Further, a review of the challenged jury instruction does not support the petitioner's claim of a directed verdict. The trial court simply states a fact; if the jury finds, beyond a reasonable doubt, that the petitioner had been convicted of robbery in the second degree prior to June 30, 1991, and as a result of that conviction had been imprisoned for a period of time longer than one year, that this supports a conviction as a persistent serious felony offender, as well as a conviction of being a persistent dangerous felony offender. The court finds that the petitioner has failed to establish, by a fair preponderance of the evidence that he was rendered ineffective assistance of counsel by virtue of trial counsels failure to object to the challenged instruction.
 IX
Count Four is titled "Ineffective Assistance of Counsel — Reasonable Doubt Instruction — Dilution of the States Burden of Proof. Again, no testimony was elicited in the course of the habeas hearing with regard to this claim, nor was it addressed in closing argument. The habeas court was simply referred to the contents of the petition. Count Four alleges that trial counsel rendered ineffective assistance by submitting an instruction on reasonable doubt that conflicted with an "exception" registered in the said request "to any language that described a reasonable doubt as a doubt that a person would `act upon' or `would be willing to act upon'". A review of the trial court's instructions as to reasonable doubt reveals that the trial court did not give the challenged instruction and correctly instructed the jury on reasonable doubt. There was no "dilution CT Page 5367 of the States burden of proof". This being the case, there could be no harm to the petitioner from the challenged request and the claim is devoid of merit. The court finds that the petitioner has failed to establish, by a fair preponderance of the evidence, that he was rendered ineffective assistance of counsel by virtue of counsel submitting a request for instruction which conflicted with an "exception" stated within the same request, nor by trial counsels failure to object to the court's instruction as to reasonable doubt.
 X
None of trial counsels acts or omissions, taken singly or in combination constitute ineffective assistance of counsel. The petitioner having failed to establish any of his allegations of ineffective assistance of counsel, the relief requested is denied and the petition is dismissed.
Judgment may enter in favor of the respondent.
By the Court,
Downey, J.